| | |
|---|---|
| YVONNE S. WALKER, PERSONAL REPRESENTATIVE OF THE ESTATE OF JAMES GLENN WALKER, DECEDENT, AND MARTIN L. TAYLOR, ANCILLARY ADMINISTRATOR OF THE ESTATE of JAMES GLENN WALKER, DECEDENT. | Case No. 4:05-CV-00035 |
| Plaintiffs, | **MEMORANDUM OPINION** |
| v. | |
| GARLAND DEAN WILSON, AND CHARLES W. BRINEGAR ENTERPRISE, INC. | By: Jackson L. Kiser Senior United States District Judge |
| Defendants. | |

The Defendants' *Motion for Summary Judgment* and the Plaintiff's *Motion for Partial Summary Judgment* are now before this Court. Here on April 13, 2006, oral argument was held on the *Motions* and they are now ripe for judgment. Explained below are the reasons that the Defendants' *Motion* will be **granted in part and denied in part**, and the Plaintiffs' *Motion* will be **granted.**

## I. STATEMENT OF LAW

Summary judgment is appropriate where no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Obviously, a genuine issue of a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Courts making this determination are "required to view the facts and draw

reasonable inferences in a light most favorable to the nonmoving party." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994); *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1129 (4th Cir. 1987). In the case where the record taken as a whole cannot lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.     STATEMENT OF FACTS

Evidence shows that the Plaintiffs' decedent in this case, James Glenn Walker ("Walker"), died after sustaining fatal injuries when he was struck by a tractor-trailer on December 31, 2002. The decedent was struck in one of the parking lots of the Kangaroo Mart truck stop on U.S. Route 29 near Blairs, Virginia. Yet, it was a parking lot designated especially for tractor trailers. On the day of the accident, one of the Defendants in this wrongful death suit, Garland Dean Wilson ("Wilson"), was operating a truck owned by the other Defendant, Charles W. Brinegar Enterprises, Inc. ("Brinegar"). For hauling woods chips from Eden, North Carolina to Hurt, Virginia, Wilson was paid by the load.

The Defendant estimates that he entered the Kangaroo Mart at roughly 8:00AM. He further estimates that he was inside the Kangaroo Mart for approximately 15 minutes. Evidence shows that the decedent had called his wife on his cellular phone at 8:14 while driving on U.S. 29 South before stopping at the Kangaroo Mart. Prior to reaching the Kangaroo Mart, Walker told his wife that he was going to stop there for a cup of coffee. Upon hanging up with his wife, Walker entered the Kangaroo Mart parking lot in his tractor-trailer. Reaching a parking space, Walker parked his truck, exited the cab, and began to walk across the truck stop parking lot

toward the Kangaroo Mart.

Precisely when Walker was walking through the Kangaroo Mart parking lot, the front end of the tractor-trailer owned and operated by the Defendants struck Walker; he was then pushed by the truck's front-driver-side tire for a distance of at least 300 feet before the Defendant stopped the truck to determine the cause of the resistance he was experiencing. Looking back, the Defendant testified that he had traveled about one-half of a looping right turn, in an attempt to get back on U.S. 29 from the Kangaroo Mart parking lot, when he felt a sensation on the left front wheel of his truck; the Defendant testified that it felt like he had a flat tire. Elaborating in his deposition, the Defendant further testified that he considered what to do at that point, and decided that if he stopped immediately to check on and repair the flat tire, he would block the path for trucks exiting the fuel pumps. Sensing he had to make a decision of whether to stop or proceed, he decided to continue at a slow speed to the service road where he could park his truck and repair his tire without blocking the way for other traffic. He stopped and then discovered the decedent in front of his truck with his chest and stomach against the wheel. At the scene the decedent died from the injuries he sustained.

Despite an attempt to find eyewitnesses who saw the initial contact between the decedent and the Defendants' truck, none were found. One witness, James P. Dixon, was on the phone inside the Kangaroo Mart and saw the decedent's body being pushed by the Defendants' truck. What Dixon observed was the truck momentarily slowing its momentum "like pushing in a clutch" and then he witnessed the truck proceed. Shortly after the Defendant discovered the decedent's body, another witness named Melvin Tilghman arrived at the scene. In response to a call for emergency response, Virginia State Police Special Agent R.A. Ruis arrived at the scene

after the accident had occurred. Special Agent Ruis measured a tire mark from Walker's body back to where the tire mark began to be 305 feet; Ruis was unable to make any conclusions about what the decedent was doing immediately before or at the time he was struck.

## III.  PROCEDURAL BACKGROUND

The Plaintiffs filed a *Complaint* with this Court on June 27, 2005. Having been served, the Defendants filed their *Answer* on July 19, 2005. Evidenced in their *Complaint*, the Plaintiffs seek damages from the Defendants pursuant to the *Virginia Death by Wrongful Act Statute* in the amount of six million dollars. *Motions for Summary Judgment* have been filed by both parties in this case. On March 14, 2006 the Defendants filed a *Motion for Summary Judgment,* the Plaintiffs filed a *Memorandum in Opposition* on March 30, 2006, and the Defendants filed a *Reply in Support* on April 7, 2006. Similarly, the Plaintiffs filed a *Motion for Partial Summary Judgment* on March 16, 2006, the Defendants field a *Memorandum in Opposition* on March 29, 2006, and the Plaintiffs filed a *Reply in Support* on April 5, 2006. The hearing on the Defendants' *Motion for Summary Judgment* and the *Plaintiffs' Motion for Partial Summary Judgment* was held on Thursday April 13, 2006 in Danville, Virginia. Each *Motion* is now ripe for judgment. Laid out below are the reasons that the Defendants' *Motion* will be granted in part and denied in part, and the Plaintiffs' *Motion* will be granted**.**

## IV.  DISCUSSION – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Plaintiffs' Theories of Negligence

In their *Complaint*, the Plaintiffs espouse two theories to support their argument that the Defendant was negligent on the day in question. The Plaintiffs argue, in their first theory, that the Defendant should have seen the decedent before impact had the Defendant maintained a

-4-

proper lookout.  Evidence exists to support this theory, the Plaintiffs claim.  Otherwise the Plaintiffs argue, in their second theory, that the Defendant should have stopped immediately upon recognizing some resistance to the movement of his left front wheel.  Reliable evidence also exists to support this theory, the Plaintiffs claim.  Given their burden, the Plaintiffs offer two experts to support their theories: Roger Stonestreet, a truck driver expert, and David Plant, an accident reconstruction expert.

### B.  Plaintiffs' First Theory

Alleging their support for the Plaintiffs' first theory, the Plaintiffs' experts claim that if the Defendant "had exercised reasonable care in the operation of the tractor trailer under his control, he would not have struck Mr. Walker."   Notwithstanding the fact that Stonestreet neither visited the accident scene nor investigated the Defendants' truck, he did review the depositions of the Defendant, of witness James Dixon, and of Trooper Ruis in preparing his report.  In his deposition, Stonestreet testified to several opinions.  Zealously testifying with regard to the Defendant's failure to see the decedent, Stonestreet opined that the Defendant violated the appropriate standard of care in the moments immediately before impact by failing to look to his left or right and get a perspective of everything around him; Stonestreet testified that his sole basis for this conclusion is the fact that the decedent was hit.

*Stonestreet's Deposition, Page 43*:

Q: Okay.  Now, the second thing that you have talked about is that a truck driver pulling out needs to get a perspective of everything around you; you need to look to the left and the right and to the back?

A: Yes, sir.

Q: What do you base your conclusion that Mr. Wilson violated that, that he didn't do that?

-5-

> A: Well, if he had looked around him, as he should have – and I know that he had to watch that trailer and truck on his right; I understand that. You have to be three-quarters of the way around him before you can swing to your right and depart the parking lot. I understand that, but if you keep the picture of the whole thing in front of you and moving very slowly, very carefully, then I don't think that – I think that he would have seen Mr. Walker.
>
> Q: All right. What do you base that on?
>
> A: I base it on 41 years of seeing people walking in front of me and knowing that they were there and never running over them.
>
> Q: Okay. And the evidence that you have reviewed in this case, what evidence can you point to to support your opinion that he did not look to his left and right and behind him and keep aware of what was going on around him? What evidence can you point to that he did not do that?
>
> A: Well –
>
> Q: Other than the fact that Mr. Walker was hit, what evidence can you point to other than that?
>
> A: Well, just common sense, that the man was there, the trucks was there, and the man got run over.

Admitting that he did not know where the decedent came from or how he came to be on the ground in front of the Defendants' truck, Stonestreet also testified that he had no personal knowledge of what the visibility would have been in the Defendants' truck.

The Plaintiffs' other expert, accident reconstructionist David Plant, inspected the accident scene and Wilson's tractor trailer, spoke to witness James Dixon, and spoke to Trooper Ruis. In his reconstruction of the accident, Plant has determined a point of impact and has opined that Walker was visible to Wilson for the four seconds leading up to impact. Outlined in his testimony, Plant's conclusions are based on assumptions he used in reconstructing the accident scene. Notably, the following assumptions were made by Plant in coming to his conclusions: 1) that Walker exited his truck and walked in a straight line to the Kangaroo Mart;

-6-

2) that Wilson's front bumper was even with the front bumper of Walker's truck when both vehicles were parked in the Kangaroo Mart parking lot; 3) that there was seven (7) to eight (8) feet between the Wilson and Walker vehicles when parked; and 4) Walker was in an upright position such that he was visible to Wilson. In this case, Plant's opinions are based on assumptions that have little or no evidentiary basis. Noting that alternatives are certainly possible, Plant acknowledged in his deposition that Walker could have been in some other position prior to impact which could have put him out of the Defendant's sight.

The Defendants argue in their *Memorandum in Support* that the Plaintiffs' first theory must fail because the Plaintiffs cannot show that the Defendant should have seen the decedent prior to the impact. Having supplied no evidence as to what the decedent was doing in the parking lot prior to the accident or how he came to be lying on the ground in front of the Defendants' vehicle, the Defendants argue that the Plaintiffs have not met their burden.

Experts retained by the Plaintiffs, the Defendants claim, do not supply sufficient evidentiary support for their theories. While Stonestreet testified that the Defendant should have seen the decedent, his opinion is based entirely on the fact that the accident occurred. Opinions proffered by Plant, the accident reconstructionist, are based on numerous assumptions that have no basis in fact – Plant provides no factual evidence that the Defendant should have seen the decedent and was negligent for such an omission. Regardless of the opinions espoused by the Plaintiffs' experts, the Defendants argue that without providing evidence as to how and why the accident occurred, the Plaintiffs cannot sufficiently prove that the Defendants were negligent.

Laying out their argument in their *Memorandum in Opposition,* the Plaintiffs respond that although there is no evidence of the decedent's conduct immediately before impact, there is

-7-

certain circumstantial evidence supporting their allegation that the Defendant would have seen the decedent had he been maintaining a proper lookout. Despite Defendants' claims, the Plaintiffs argue that their experts' opinions are based on the available facts and not mere speculation. Accordingly, the Plaintiffs allege that the opinion of their reconstruction expert, David Plant, and his analysis of the Defendant's visibility leading up to the truck's impact with Walker, is based on an in-depth investigation which included, but was not limited to, two visits to the accident scene. Returning twice to the accident scene, Plant was accompanied by the investigating state trooper, whom he interviewed, during one visit and was accompanied by witness James Dixon during the other visit. Evidentiary and factual support exists for the assumptions on which Plant's opinions are based, Plaintiffs argue, despite the Defendants' claims to the contrary. Yielding none to the Defendants' claims, the Plaintiffs argue that Plant's own observations and findings from the investigation he performed at the scene provide a sufficient evidentiary basis for his assumptions.

On this issue, the Fourth Circuit has recognized that "Virginia follows the general rule that plaintiff bears the burden of demonstrating wrongfulness. 'In a negligence action, it is the plaintiff's burden to prove how and why the accident happened.'" *McCormick v. AT&T Technologies*, 934 F.2d 531, 535 (4th Cir. 1991), cert. denied, 501 U.S. 1048 (1992) (*quoting Hoffner v. Kreh*, 227 Va. 48, 313 S.E. 2d 656, 658 (1984)). Under the precedent also established by the Virginia Supreme Court in *Hoffner*:

> Negligence cannot be presumed from the mere happening of an accident. The burden is on the plaintiff who alleges negligence to produce evidence of preponderating weight from which the jury can find that the defendant was guilty of negligence which was a proximate cause of the accident. The evidence produced must prove more than a probability of negligence and any inferences therefrom must be based on facts, not on presumptions. It is incumbent on the plaintiff who alleges negligence to show why and

-8-

how the accident happened, and if that is left to conjecture, guess or random judgment, he cannot recover. *Hoffner*, 227 Va. at 658.

Also in *Hoffner,* where the defendant ran over the plaintiff who was evidently lying in the road, the Virginia Supreme Court held that the trial court properly struck the plaintiff's evidence:

> In the present case, the Administratrix has not shown how, when, or why Hoffner came to be on Route 29. There is no evidence, only conjecture, as to how he became prone in the lane of traffic. He may have fallen asleep, become ill, or sought to commit suicide. He may have rolled into the road from the shoulder just before Kreh's car reached him. There is no way to determine what happened, how long he had been in the road, or whether he had been walking, running, standing, or sitting before lying down. *Id*. at 659.

For failing to show that the decedent was in the road and visible to the defendant in time for the defendant to see him, the Court held that the Plaintiff could not meet her burden of proof:

> It was the burden of the Administratrix, however, to show that Hoffner was in the road in time for a driver in the exercise of ordinary care to see and avoid him, and the Administratrix failed to present evidence from which the jury reasonably could so find. We hold, therefore, that the trial court did not err in striking the evidence and entering judgment in favor of Kreh. *Id*.

Regarding the Plaintiffs' first theory in this case, that the Defendant was negligent because he failed to keep a proper lookout and see the decedent prior to impact, the Plaintiffs contend that the jury must determine whether the decedent was in the Defendant's range of vision in the moments leading up to impact, and whether the Defendant should have seen him if he was keeping a careful and prudent lookout. I disagree. Evidence presented in this case requires me to grant summary judgment for the Defendants on the Plaintiffs' first theory because the Plaintiffs, like the plaintiff in *Hoffner*, have not met their burden in proving that the Defendant acted negligently in the moments before impact. Nobody witnessed the impact of the accident to provide any facts on these issues. David Plant, the Plaintiffs' "reconstruction expert," has based his report and testimony on many assumptions. Of course, Plant does

ultimately conclude that the decedent was in the Defendant's line of vision for four second before impact, and that the Defendant was negligent in not seeing the decedent and avoiding him in that time. For the record, however, Plant admits that if one or some of his assumptions are wrong, the decedent might not have been in the Defendant's line of vision immediately before impact.

Joined with Plant's testimony, the Plaintiffs also provide the testimony of a "truck driver expert," Roger Stonestreet, who bases his testimony almost entirely on his own experience as a truck driver. As an expert, Stonestreet concludes that the Defendant must have been negligent in not keeping a proper lookout because had the Defendant kept a proper lookout, he would not have struck the decedent. Mainly, Stonestreet bases his conclusion on his own former experience as a truck driver – not on facts; Stonestreet has not been to the scene of the accident. Each time the Fourth Circuit and the Virginia Supreme Court have been confronted with this issue, they have said that the ultimate result of an accident cannot be used as proof that negligence occurred in causing it. Said another way, contrary to what the Plaintiffs' truck driver expert espouses, merely because the Defendant struck the decedent does not mean that the Defendant acted negligently in the moments leading up to the impact. Having given these reasons, I will grant the *Defendants' Motion for Summary Judgment* with regard to the Plaintiffs' first theory.

### C. Plaintiffs' Second Theory

Additionally, the Plaintiffs' claim in their second theory that the Defendant was negligent in failing to stop immediately upon his perception of a problem with his wheel, and that had he done so, the decedent would have survived. Yet again, the Plaintiffs rely on an expert to support

-10-

their theory; they rely on the opinion of Dr. George R. Nichols, a consulting forensic pathologist and practicing pathologist who reviewed the autopsy report and photographs of the decedent..

Judging the autopsy report and photographs, Nichols testified that there were three potentially life-threatening or fatal injuries: injury to the decedent's chest, head, and spleen. Nichols also testified that there were four critical events involved in this accident (*Nichols' Deposition, Pages 44 – 45*): 1) impact when Wilson's truck first struck Walker; 2) impact when Walker's body struck the pavement after being knocked to the ground by the first event; 3) impact when Wilson's truck came in contact with Walker a second time after his body was on the ground; and 4) the point in the accident when Walker thought he had a flat tire and did not stop.

Under cross-examination during his deposition, Nichols conceded that because there is no evidence as to what injuries or damages to Walker's person were caused by events one, two, and three, there is no way he can say to a reasonable degree of medical probability that if Wilson had stopped his truck at the time of the fourth event, that Walker would have survived (*Nichols' Deposition, Page 45*):

> Q: Okay. You know, if we had any eyewitness who could – who could fill the gaps in and the unknowns, it might help. But without that information as to when those things happened, we can't say that if he had stopped when he had that perception that this man would have lived?
>
> A: You are correct.

Nichols stated the same opinion in his deposition when he was cross-examined by the Plaintiffs' counsel (*Nichols Deposition, Page 48 - 49*):

> Q: Doctor Nichols, I believe you stated in response to one of Mr. Moffit's [sic] questions that we can't say with any certainty that if Mr. Wilson had stopped his truck when he initially felt resistance to his tire that Mr. Walker would have lived?

-11-

A: That's correct, that's how it was asked and what I responded.

In his deposition when he was further pushed by Plaintiffs' counsel to agree that if the Defendant had stopped his truck immediately, the decedent would not have died, Nichols further refused (*Nichols Deposition, Page 50*):

> Q: All right. But with the information you have right now, is it your opinion that within a reasonable degree of medical probability, that if Mr. Walk – Mr. Wilson had rapidly stopped his truck at that point in time, Mr. Walker would not have received lethal injury.
>
> *** (Attorney Objection)
>
> A: What I think I attempted to state was that I – it was that the continuation of injuries would have obviously been avoided had the truck been expeditiously stopped at the point that he knew something was amiss.
>
> Q: Right.
>
> A: What I also had to – to state was that – that I did not know the extent of injury that had been sustained to the man either before or as the result of the – the abnormality perceived in the operation of the truck by the truck driver.

Obviously, the Defendants argue that without such evidence the Plaintiffs' second theory of liability must fail. Rightly, the Defendants point out that this is a wrongful death action where the Plaintiffs must prove that the decedent's death was a proximate result of the Defendant's negligence. The Defendants do not argue that summary judgment should be granted on the issue of whether the Defendant was negligent in failing to stop his truck immediately upon feeling the sensation at his tire. Instead, the Defendants seek summary judgment because they allege that the Plaintiffs cannot prove that the decedent would have survived if the Defendant had stopped his vehicle immediately. That is, the Defendants argue that they deserve summary judgment because the Plaintiffs have not proffered sufficient evidence to show that the Defendant's failure to stop was the proximate cause of the decedent's death.

-12-

The Plaintiffs then respond to the Defendants' assertion by claiming that Dr. Nichols has opined, with a reasonable degree of medical certainty, that the decedent would have survived if the Defendant had stopped immediately upon perceiving the resistance to his left front tire. With their *Memorandum in Opposition*, the Plaintiffs submitted two affidavits in which Dr. Nichols states further clarifications to his expert opinion. In his *First Affidavit*, Nichols states (*Affidavit, Page 1*):[1]

> I have prepared a written report covering my opinions as well as given a deposition on December 15, 2005. This Affidavit is being made in order to clear up a potential misunderstanding regarding my deposition testimony.
>
> 1. Attached and marked as Exhibit 1 is my letter opinion wherein I stated that if the defendant, Mr. Wilson, had stopped his vehicle immediately upon realizing that he had encountered interference at the area of the left front wheel as he was approximately halfway through his right turn the injuries which caused Mr. Walker's death would have been prevented.

In his *Second Affidavit*, Nichols states (*Second Affidavit, Page 1*):[2]

> These opinions have been held by me from the inception of my participation as an expert witness in this case. However, when defense counsel took my deposition, he did not inquire into the specifics of my opinion to the effect that the death of James Glenn Walker was caused by the failure of the defendant Mr. Wilson to stop his vehicle when he first knew or should have known that there was interference with the movement of the tractor trailer truck he was operating.

In their *Memorandum in Support,* the Defendants point out that Nichols declined to opine in his deposition that he could say with a reasonable degree of medical certainty that the decedent would have survived had the Defendant immediately stopped his truck upon feeling the

---

[1] *The Affidavit of George R. Nichols, II, M.D.* was sworn on February 14, 2006. The *Defendants' Motion for Summary Judgment* was filed on March 14, 2006 and the *Plaintiffs' Motion for Partial Summary Judgment* was filed on March 16, 2006.

[2] *The Second Affidavit of George R. Nichols, II, M.D.* was sworn on March 24, 2006.

-13-

sensation near his tire. However, in their *Response*, the Plaintiffs contend that Nichols has maintained all the time that if the Defendant had stopped the truck immediately upon sensing an interference with his left front tire, the injuries which proved fatal to the decedent would not have occurred, and more likely than not, he would have survived.

Neither the Defendants in their *Motion for Summary Judgment* nor the Plaintiffs in their *Motion for Partial Summary Judgment* ask for summary judgment to be entered on the issue of whether the Defendant was negligent in not immediately stopping his truck upon feeling a sensation at his left front tire. Therefore I will not enter summary judgment in favor of either party on that issue. Instead, the Defendants have asked for summary judgment to be entered on the issue of whether the Defendant's failure to stop his truck upon feeling the sensation at his left front tire was the proximate cause of the decedent's death. In the Commonwealth, a plaintiff must prove that the negligence of the defendant proximately caused the death of the decedent to be successful in a claim for wrongful death.[3]

I will deny the *Defendants' Motion for Summary Judgment* with regard to the Plaintiffs' second theory. In determining whether to grant the Defendants' *Motion*, I must view the facts of this case in the light most favorable to the Plaintiffs. The only evidence offered by the Plaintiffs to address this issue is the testimony of its pathologist expert, Dr. Nichols. The Plaintiffs claim that Dr. Nichols has testified, via his deposition and two clarifying affidavits, that had the Defendant stopped his truck immediately upon feeling the sensation at his left front tire, the decedent would have survived. Consequently, the Plaintiffs argue that this evidence proves that

---

[3] Though not cited by the Plaintiffs in their *Complaint* or by the parties in their briefs regarding their Motions for Summary Judgment, in the Commonwealth the *Action for Death by Wrongful Act* is codified in *Virginia Code §8.01-50.*

-14-

the Defendant's decision to keep driving was the proximate cause of the decedent's death. As the U.S. Supreme Court has recognized:

> It is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences. The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable. (citations omitted). That conclusion, whether it relates to negligence, causation or any other factual matter, cannot be ignored. *Tennant v. Peoria & Pekin Union Railway Company*, 321 U.S. 29, 35 (1944).

When I piece together the testimony of Dr. Nichols from his deposition,[4] from his *Affidavit*,[5] and from his *Second Affidavit*,[6] I must view his testimony in the light most favorable to the Plaintiffs. In doing so, I have to find that the Plaintiffs have offered enough proof for a jury to decide whether the Defendant was negligent in not immediately stopping his truck, and if he was negligent, whether that negligence proximately caused the death of the decedent. While the Plaintiff has supplied "conflicting circumstantial evidence," I believe that in this case it is the jury's function "to select from among conflicting inferences and conclusions that which it considers most reasonable." For these reasons, I will deny the *Defendants' Motion for Summary Judgment* with regard to the Plaintiffs' second theory.

**V.     DISCUSSION – PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

[4] Dr. Nichols was deposed on December 15, 2005 in Louisville, Kentucky in person by the Defendant's Counsel, Mr. Moffet. Plaintiffs' Counsel Mr. Wiegard joined the deposition by telephone.

[5] Dr. Nichols' *Affidavit* was sworn on February 14, 2006.

[6] Dr. Nichols' *Second Affidavit* was sworn on March 24, 2006.

-15-

The Defendants have alleged in their *Answer (Page 3, Paragraph 8)* that "James Glenn Walker was guilty of negligence which proximately contributed to cause this accident and, therefore, plaintiffs are barred from any recovery herein." In their *Motion for Partial Summary Judgment*, the Plaintiffs argue that because there is no evidence as to what the decedent was doing in the moments leading up to the accident, the Defendants cannot prove that the decedent was contributorily negligent.

The Plaintiffs point out that there is a lack of evidence in this case concerning what the decedent was doing before impact. The state trooper, R.A. Ruis, did not arrive until after the impact so he can offer no proof of the decedent's actions before impact. The Defendant, obviously, did not see the decedent before impact and knows of no eyewitness(es). The witness, Melvin Tilghman, did not witness anything until the Defendant had actually stopped his truck well after impact. The other witness, James Dixon, also stated in his deposition that he did not see how the initial contact occurred.

In the Commonwealth it is well settled that if a defendant asserts contributory negligence on the part of the deceased to defeat recovery by the plaintiff, then the burden is on the defendant to prove it, unless such negligence is disclosed by the evidence of the plaintiff, or might fairly be inferred from all the circumstances. See, *Core v. Wilhelm*, 98 S.E. 27, 29 (1919). Therefore, just as it is the Plaintiffs' burden to prove that the Defendants are guilty of negligence, the Defendants must prove by a preponderance of the evidence that the Plaintiffs' decedent was negligent, and that such negligence contributed to cause the injuries to the Plaintiffs' decedent; such a showing is necessary in order for the Plaintiffs to be barred from recovery. Under Virginia law, there is a presumption that the decedent "acted from the instinct of self-

preservation and exercised due and proper care for the protection of his person and the preservation of his life." *Armstrong v. Rose*, 196 S.E. 613, 618 (1938).

The Plaintiffs argue that although the Defendants allege in their *Answer* that the decedent was "guilty of negligence which proximately contributed to cause this accident," there is simply no evidence – testimonial, physical, or otherwise – regarding the decedent's actions immediately before impact that could allow the Defendants to satisfy their burden of proof necessary to establish that the decedent was contributorily negligent.

The Defendants stated *(Brief in Opposition, Page 2)* that if this Court entered summary judgment in favor of the Defendants on the Plaintiffs' first theory, then they would have no objection to this Court granting the *Plaintiffs' Motion for Partial Summary Judgment*. That is, if this Court found that the Plaintiffs offered insufficient proof of the Defendant's action immediately before impact to make the issue of whether the Defendant was negligent in striking the decedent one of material fact, then the Defendants would agree that they have insufficient evidence of the decedent's actions immediately before impact to make the issue of whether the decedent was contributorily negligent one of material fact. Said yet another way, we do not know whether the Defendant should have seen the decedent immediately before impact nor do we know whether the decedent should have seen the Defendant immediately before impact.

As stated above, I will indeed grant the *Defendants' Motion for Summary Judgment* with regard to the Plaintiffs' first theory – that the Defendant was negligent in impacting the decedent. Therefore, I will also grant the *Plaintiffs' Motion for Partial Summary Judgment*.

## VI.     CONCLUSION

-17-

For these reasons stated above, the Defendants' *Motion for Summary Judgment* shall be **granted in part and denied in part** and the Plaintiffs' *Motion for Partial Summary Judgment* shall be **granted**.

The Clerk of the Court is hereby directed to send a certified copy of this *Memorandum Opinion* and the accompanying *Order* to all counsel of record.

Entered this 28th day of April, 2006.

s/Jackson L. Kiser<br>
Senior United States District Judge